INHABITANTS OF RICHMOND *vs.* SAMUEL TOOTHAKER & another.

Sagadahoc. Opinion May 19, 1879.

*Pleading,—abatement,—demurrer. Bond. Error. Unnegotiable Note. Principal and Surety. Stat.—construction.*

In debt against only two of the three obligors on a joint bond, where the declaration alleged that the defendants, together with S, executed the bond on which the action is based: *Held,*

(I.) That the non-joinder might have been pleaded in abatement;

(II.) That it was good ground for demurrer;

(III.) That it was no ground for nonsuit; and

(IV.) That the bond is none the less the defendants' obligation because another was jointly bound with them.

*Semble,* That error will not lie to reverse a judgment against two of three obligors on a joint bond, when the non-joinder might have been pleaded in abatement; or when the case goes up on the report of the judge.

Where the collector, near the close of the municipal year, settled with the selectmen and treasurer, and he and his sureties gave to the treasurer their joint and several unnegotiable note for the balance found due from the collector; and the collector having subsequently gone into bankruptcy, the town proved the note in bankruptcy against the estate of the collector, and received a dividend: *Held,*

(I.) That the note is not, presumptively, payment, but a memorandum acknowledging on the part of the makers the sum due; and

(II.) That the town adopted the sum therein mentioned as the correct sum due.

When the collector is a defaulter and has not paid the state tax, the town may advance the balance of the state tax deficit to the state treasurer, even if the provisions of R. S., c. 6, §§ 123 and 126 have not been previously complied with, they being directory.

For such advances the collector and his sureties are liable, under the provisions of R. S., c. 6, § 128.

ON REPORT.

DEBT on the official bond of Samuel Brown, as collector of the town of Richmond for the municipal year of 1872. The bond

was duly executed by Brown as principal and by these defendants as his sureties. It stipulated that they "are holden and stand firmly bound and obliged unto the inhabitants of said town of Richmond in the sum of twenty-four thousand dollars to be paid to the said inhabitants, to the which payment, well and truly to be made, we bind ourselves, our heirs, executors and administrators firmly by these presents."

The material part of the declaration was as follows: "In a plea of debt, for that the said Hagar and Toothaker, together with one Samuel Brown, by a certain writing obligatory, made and sealed, and as the deed of the said Hagar, Toothaker and one Samuel Brown, on the thirteenth day of July, A. D. 1872, at said Richmond, delivered to the plaintiffs, which is here in court to be produced, acknowledged themselves to be bound to the plaintiffs in the sum of twenty-four thousand dollars to be paid to them on demand."

The defendants pleaded *non est factum*, with a brief statement setting out the conditions of the bond, (which was in the usual form) and alleging full performance.

The plaintiffs put in evidence the collector's warrant, containing, among other things, the following illegal directions: "And for want of goods or chattels whereon to make distress, besides those animals, implements, tools, articles of furniture and other goods and chattels which are by law exempted from attachment for debt, for the space of twelve days, you are to take the body of," etc.

They also put in the commitment, showing the state tax to be $7,137.38, county tax $1,834.60, and town tax $15,570.24, aggregating $24,542.22. It was admitted that the collector had paid to the state treasurer $2,744.02, and to the county treasurer the whole of the county tax.

The plaintiffs introduced the testimony of Samuel Brown, tending to show that there had been collected by himself and his sureties (who took the collector's book from him at a certain time) all the tax committed to him except $211.60.

It also appeared that, on February 20, 1873, Brown settled with the selectmen and treasurer, and found the sum of $2,341.04 due

to the town; that, in accordance with the usage which had been followed for several years past, the collector gave to the treasurer a joint and several unnegotiable note of that date for that sum, signed by himself, and by these defendants as sureties, payable on demand, containing the declaration that the sum for which the note was given was " the amount due the town for its portion of taxes of 1872 committed to him for collection, as per settlement with the selectmen this day."

It also appeared in evidence that, on May 14, 1873, upon the petition of his creditors, Brown was adjudged a bankrupt; that, on March 10, 1874, the note above mentioned was proved in bankruptcy by the town agent of Richmond, against the estate of Brown, bankrupt; and that, on May 19 following, the town received a dividend of $548.34.

It also appeared that the state treasurer issued his warrant against Brown in July, 1873, on which the sheriff collected $1,275.20, and that another was issued in the following October; but that no arrest of Brown was made on either.

It also appeared that the town, on July 2, 1873, paid the state treasurer $1,717.13; on December 12, 1873, $2,612.91; and on January 24, 1874, $63.32; making $4,393.36 in all.

It also appeared that the plaintiffs, on September 27, 1875, sued Brown for money had and received, and trusteed James M. Hagar, one of the defendants; that a judgment was recovered and the trustee charged for $300. The action was for money collected by Brown on the tax bills of 1872. The costs of that action were $101.54.

It also appeared that, at various times after February 20, 1873, (the date of the note) Brown paid to the town divers sums, amounting in all (including the dividend on the note) to $3,936.32.

There was testimony tending to show that Brown had held the office of collector for several successive years, and that he had appropriated divers sums collected to preceding years.

The former judgment and various other testimony was objected to by the defendants; but the view taken by the court renders a report of it unnecessary.

The case was taken from the jury and reported to the full court, who were to render judgment, upon so much of the testimony reported as was legally admissible, according to the legal rights of the parties; and that if any evidence had been improperly excluded, the case to stand for trial, at the option of the party aggrieved thereby.

*J. W. Spaulding,* for the plaintiffs.

*W. T. Hall, with N. Whitmore,* for the defendants, contended, *inter alia,* that the giving of the note was a binding settlement between the parties, and transferred the liability of the sureties from the bond to the note; that the receiving of the dividend was a ratification by the town; that the provisions of R. S., c. 6, §§ 123–127, should have been complied with; that the action is not maintainable against the defendants alone.

VIRGIN, J. Debt against the sureties on a town collector's bond, executed jointly, by Samuel Brown as principal, and these defendants as sureties.

The plaintiffs set out a joint, and not a joint and several, bond, averring, with proper allegations of time and venue, that the defendants, "together with one Samuel Brown," by a certain writing obligatory, made, sealed and delivered to the plaintiffs " as the deed of the said Hagar, Toothaker and Brown, and here in court to be produced, acknowledged themselves to be bound to the plaintiffs in the sum of $24,000, to be paid to them on demand."

The defendants pleaded *non est factum,* with brief statement of *omnia performaverunt.*

The case comes up on report, stipulating, among other things, that this court, with jury powers as to the facts, " are to render judgment, upon so much of the evidence as is legally admissible, according to the legal rights of the parties." By this stipulation the pleadings must be considered.

The defendants contended at the argument that the action is not maintainable, for the reason that the bond is joint and only two of the three obligors are made defendants.

The plaintiffs replied that the non-joinder should have been pleaded in abatement, and that the bankruptcy of Brown excused the non-joinder.

To these positions the defendants rejoined: (1) That the plaintiffs having in their declaration informed the court that Brown was a joint obligor, the defendants were thereby relieved of the necessity of pleading that fact in abatement; and (2) That the debt, created by Brown's defalcation, was fiduciary, and therefore not barred by his discharge in bankruptcy.

The rule of the common law has long been well settled that all of the joint obligors or promissors (with certain well known exceptions not essential to the decision of this case) ought to be made defendants; and that the plaintiff may be compelled to join them, if advantage be seasonably taken of any omission by proper plea. 1 Wm. Saund. 291, *b.* n. 4. *West* v. *Furbish*, 67 Maine, 17. And the general rule is that objection to the non-joinder of a defendant can be taken only by plea in abatement *White* v. *Cushing*, 30 Maine, 267. *Reed* v. *Wilson*, 39 Maine, 585. *Richmond* v. *Brown*, 67 Maine, 373.

But while there can be no doubt that, generally, in case of the non-joinder of defendants, unlike that of plaintiffs, it is essential for the party defendant to plead it in abatement, and therein give the plaintiff a better writ by giving the name of whomsoever else ought to be joined; it would seem to be equally well settled that when the plaintiff knows all who ought to be joined, and mentions them in his declaration, then there is no necessity for giving such information by way of plea in abatement; but that, in such case, the non-joinder is a good ground of demurrer, or motion in arrest of judgment; and in case of judgment, by default at least, it may be assigned for error. *Harwood* v. *Roberts,* 5 Maine, 381. Gould Plead., c. 5, § 115. 1 Chit. Plead. (16 Am. ed.) 54, note *k.*

That the objection cannot be taken at the trial, as a ground of nonsuit, on the general issue, was decided by Whelpdale's case, 5 Co. 119, and by *South* v. *Tanner*, 2 Taunt. 254, in which the non-joinder appeared on the face of the declaration, but a nonsuit was set aside and a new trial granted. *Neally* v. *Moulton,* 12

N. H. 483. And we do not perceive any reason why it should. There is no variance, as it was formerly understood. The obligation is in law regarded as the deed of the defendants, although not their deed alone. It is none the less the defendants' obligation because another was bound with them. *Hapgood* v. *Watson*, 65 Maine, 510. *Gove* v. *Lawrence*, 24 N. H. 128. " It would be very odd," said Mansfield, C. J., " if proof that a bond was executed by three should disprove that it was executed by two of them." *South* v. *Tanner, supra.*

The non-joinder might have been pleaded in abatement, notwithstanding it appeared in the declaration. *Harwood* v. *Roberts, supra. Neally* v. *Moulton, supra.* That is the means which enables one obligor to compel a joinder of all. Such a joinder may not be necessarily for the benefit of the plaintiff, but of the defendant. For, when all are joined, and judgment is rendered against all, any one of them may, by paying it, have contribution against the others ; and the judgment will afford him conclusive evidence of the amount to be paid by them. If, then, a defendant omits to compel a joinder by pleading a non-joinder, he simply waives an advantage which he might have obtained. He would not thereby lose his right to contribution, to be sure, but he would have no judgment which would conclude his contributors.

The defendants did not demur. The statute forbids arrest of judgment. R. S., c. 82, § 26. Whether, if judgment be rendered against these defendants, they can reverse it by writ of error, we need not now decide, as no such writ is before us. We will suggest, however, in passing, that, generally, error does not lie on a judgment rendered on an agreed statement. *Alfred* v. *Saco*, 7 Mass. 380. *Carroll* v. *Richardson*, 9 Mass. 329. *Gray* v. *Storer*, 10 Mass. 163. Nor where facts proved before the jury are reported by the judge. *Johnson* v. *Shed*, 21 Pick. 225. Unless it be for an error disclosed by the record which will not be cured by the verdict. *Smith* v. *Morse*, 6 Maine, 275. *Warren* v. *Coombs*, 44 Maine, 88. Nor when the assigned error might have been pleaded in abatement ; " for it shall be accounted his folly for the plaintiff in error to neglect the time of that excep-

tion." Bac. Abr. Error, K. 5. *Merrill* v. *Coggell*, 12 N. H. 97, 104. *Neally* v. *Moulton, supra.*

Under these pleadings, then, we perceive no legal objection to inquiring into the merits of this case. The question of waiver was not raised in *Harwood* v. *Roberts, supra,* the judgment sought to be reversed in that case having been rendered on default.

The warrant to the collector was defective, and imposed upon the collector no official obligation to collect the taxes committed to him ; but he and his sureties are held to account for the money actually paid to him by the tax-payers. *Richmond* v. *Brown,* 66 Maine, 373.

The case shows that, on February 20, 1873, the collector and these defendants as his sureties settled with the selectmen and treasurer ; and, in accordance with a practice of some years standing, gave their non-negotiable note for $2,341.04, declaring therein that that was " the amount due the town for its portion of taxes of 1872 committed to " the collector " for collection, as per settlement with the selectmen this day." The note, not being negotiable, was not presumptively a payment (*Bartlett* v. *Mayo,* 33 Maine, 518); but it was a memorandum signed by these defendants, acknowledging the balance due on town taxes from their principal. And the town adopted this amount as correct by proving the note, March 10, 1874, in bankruptcy, against the estate of the collector, and receiving a dividend of $548.34.

Moreover, the collector was indebted to the town, not only for the sum indicated in the note for a balance due on town taxes, but for the additional sum of $4,393.36, balance due on state tax paid by the town on default of the collector, (R. S., c. 6, § 128) ; thus making the balance due from the collector to the town of $6,734.40. *Gorham* v. *Hall,* 57 Maine, 58, 62. This is the debit side of the account.

But, since February 20, 1873, (date of the note) the town has received from the collector divers unappropriated sums, which, including the dividend mentioned and $300 in the trustee action, amount to $4,236.32. Appropriating this amount of payment to the indebtment of the collector, leaves a balance due of $2,498.08.

The whole sum of $300, exclusive of costs, we allow in payment, inasmuch as the sureties are not liable to costs in a fruitless action against the principal, of the pendency of which they had no notice. *Baker* v. *Garrett*, 3 Bing. 56.

The defendants cannot complain that the directions of R. S., c. 6, §§ 123 and 126, were not complied with. *Gorham* v. *Hall*, *supra*. The collector had been put into bankruptcy, and consequently he had no estate which could be destrained; and his arrest would have been fruitless. These provisions are directory. The defendants might as well complain that an assessment under § 127 was a prerequisite to payment of the state tax deficit.

Our conclusion, therefore, is that the plaintiffs are entitled to judgment for $2,498.08, and interest from the date of the writ.

APPLETON, C. J., DANFORTH, PETERS and LIBBEY, JJ., concurred.